**GRIFFIN HAMERSKY P.C.**
485 Madison Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 710-0338
Facsimile: (212) 710-0339
Scott A. Griffin
Michael D. Hamersky

Proposed Counsel for the Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
In re:                                                        :    Chapter 11
                                                              :
FILMED ENTERTAINMENT INC.,                                    :
                                                              :    Case No. 15-_____( )
                              Debtor.[1]                      :
                                                              :
-------------------------------------------------------------X

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 345, 363, 503(b)(1) AND 507(a)(2)
AUTHORIZING  (I) CONTINUED MAINTENANCE OF EXISTING BANK
ACCOUNTS; (II) CONTINUED USE OF EXISTING BUSINESS FORMS;
(III) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM;
(IV) CONTINUED INTERCOMPANY TRANSACTIONS; AND
(V) WAIVER OF CERTAIN GUIDELINES RELATING TO BANK ACCOUNTS**

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby moves (the "Motion") for entry of interim and final orders, pursuant to sections 105(a), 345, 363, 503(b)(1) and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), (A) authorizing, but not directing:  (i) the continued maintenance of the Debtor's existing bank accounts; (ii) the continued use of the Debtor's existing business forms; (iii) the continued use of the Debtor's existing cash management system; (iv) continued intercompany transactions; and

---

[1]   The last four digits of the Debtor's federal tax identification number are 3867.

(v) a waiver of certain operating guidelines relating to bank accounts, and (B) scheduling a final hearing to be held on or after a date that is twenty-one (21) days after the date of this Motion.

In support of this Motion, the Debtor relies upon and incorporates by reference the *Affidavit of Glenn Langberg*, filed under Local Bankruptcy Rule 1007-2 in support of the Debtor's chapter 11 petition and various first day applications and motions (the "Affidavit"), filed with the Court concurrently herewith. In further support of this Motion, the Debtor respectfully represents:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 345, 363, 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

### Background

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition (the "Chapter 11 Case") in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor continues to manage and operate its business as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

5. The factual background regarding the Debtor, including its operations, its capital and debt structure, and the events leading to the filing of this Chapter 11 Case, is set forth in detail in the Affidavit, which is deemed fully incorporated herein by reference.[2]

---

[2] Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Affidavit.

2

**Relief Requested**

6.     By this Motion, the Debtor seeks entry of interim and final orders pursuant to sections 105(a), 345, 363, 503(b)(1) and 507(a)(2) of the Bankruptcy Code: (a) authorizing the continued use of its centralized cash management system and procedures; (b) authorizing and directing all of the Debtor's banks (the "Banks") that process checks and fund transfers on account of any prepetition obligations which have been authorized by this Court to be paid (the "Prepetition Payment Obligations") to receive, process, honor and pay all of the Debtor's prepetition checks and fund transfers on account of such Prepetition Payment Obligations; (c) authorizing the maintenance and continued use of its existing bank accounts and business forms; (d) authorizing certain intercompany transfers; and (e) granting related relief. The relief requested herein will help facilitate the Debtor's orderly entry into chapter 11 and will help avoid disruptions and distractions that could divert the Debtor's attention from more pressing matters during the initial phase of this Chapter 11 Case.

**Basis for Relief**

7.     Prior to the commencement of the Chapter 11 Case, in the ordinary course of its business, the Debtor maintained a highly efficient cash management system (the "Cash Management System"). The Cash Management System, which is managed by the Debtor's service provider, Bookspan LLC ("Bookspan"), facilitates the efficient flow and management of funds involved in the Debtor's business operations.[3] The Cash Management System is carefully constructed, automated and customized to address the specific needs of the Debtor, which

---

[3]  Pursuant to that certain Services Agreement between the Debtor and Bookspan, dated, January 1, 2014, Bookspan personnel administers substantially all of the Debtor's banking affairs. Bookspan is an afflilate of the Debtor.

3

ensures its ability to efficiently monitor and control its cash position, as more fully described below.

8. In connection with the Cash Management System, the Debtor maintains four (4) bank accounts (the "Bank Accounts") at JPMorgan Chase & Co. ("JPM"). A list of the Bank Accounts is attached hereto as Exhibit "A".[4]

9. The Debtor routinely deposits, withdraws, and otherwise transfers money to, from and between certain of the Bank Accounts by various methods (the "Ordinary Transfer Methods"), including by wire, automated clearing house ("ACH") transfers, and other electronic fund transfers.

10. A chart illustrating the basic structure and flow of funds through the Bank Accounts in the Cash Management System is attached hereto as Exhibit "B." The amount of funds that flow through the Cash Management System on a monthly basis fluctuates greatly. However, in aggregate, on an average current monthly basis, approximately $2.7 million in funds were deposited, withdrawn or transferred to, from and between the Bank Accounts, using various Ordinary Transfer Methods. The following is an overview of the Cash Management System.

The Cash Management System

11. Receipts received from the Debtor's retail operations primarily fund the Debtor's Cash Management System. Funds required for payment of obligations owed by the Debtor are transferred from the Concentration Account (defined below) maintained by the Debtor directly to certain creditors or, alternatively, to its Disbursement Account (defined below)

---

[4] The Debtor believes that Exhibit "A" is a complete listing of its Bank Accounts. In the event, however, that it is determined that any Bank Account was inadvertently omitted from Exhibit "A", the Debtor requests authority to submit an amended order on notice of presentment to provide that such Bank Account be afforded the relief requested herein.

4

in amounts sufficient to cover items presented for payment against funds contained in the Disbursement Account.

12.  The Debtor deposits: (i) customer cash receipts and collection agency receipts relating to DVD sales into one depository account; and (ii) customer cash receipts and collection agency receipts relating to CD sales[5] into a separate depository account (collectively, the "Deposit Accounts"), both held at JPM. The Deposit Accounts are set forth and identified as "Depository Accounts" on Exhibit "A". Deposit Account funds in excess of a preset balance or "peg balance" ($5,000 for each Deposit Account) are automatically swept into the Concentration Account.

13.  The Debtor maintains a centralized account for cash flows at JPM (the "Concentration Account"). The Concentration Account receives: (i) funds swept from the Deposit Accounts; (ii) incoming ACH transfers for customer credit card receipts from the Debtor's credit card processors, Braintree Payment Solutions, LLC and PayPal; and (iii) transfers by check, wire and ACH relating to a variety of business receivables, including transfers from Bookspan and insurance rebates and adjustments. On average, approximately $1.4 million in funds are deposited or transferred into the Concentration Account per month.

14.  Disbursements on account of obligations of the Debtor are made from the Concentration Account or the Disbursement Account (defined below). On average, such aggregate disbursements are approximately $1.3 million per month.

15.  Funds from the Concentration Account are disbursed by wire or ACH transfer for a variety of business obligations, including professional fees, royalty payments, tax obligations and customer refunds. Otherwise, funds are transferred from the Concentration

---

[5]  The Debtor exited the CD/music service business in 2010. Accordingly, amounts collected in connection with this former business line are the residual account receivables related thereto.

Account to the Disbursement Account in amounts sufficient to cover items presented for payment on account of other business obligations, such as accounts payable. Additionally, cashier's checks may be drawn on the Concentration Account for certain special circumstances.[6] On an aggregate monthly basis, approximately $900,000 in funds are disbursed from the Concentration Account directly to creditors by wire or ACH transfer and approximately $400,000 in funds are transferred from the Concentration Account to the Disbursement Accounts identified on Exhibit "A".

16.     The Disbursement Account is a zero-balance account maintained by the Debtor at JPM for disbursements relating to accounts payable obligations (the "Disbursement Account").[7] The Disbursement Account is automatically funded from the Concentration Account as checks are presented for settlement; such checks are drawn on the Disbursement Account one to several times per week, as needed.

Intercompany Transfers

17.     The Debtor's administrative functions (including accounting, tax, treasury, legal, human resources, risk management, inventory and non-inventory purchasing), marketing functions (including creative, production, lettershop, promotional and strategic marketing, and list management), technology functions (including information technology, website and email operations and telecommunications), order processing functions (including transaction and payment processing, member account management, and invoicing) and certain other functions are performed by Bookspan, pursuant to that certain Services Agreement between the Debtor and

---

[6] Such special circumstances include payment of customer refunds from the Debtor's prior customer refund payment system and payment obligations that require the issuance of cashiers checks, such as settlement payments in certain circumastances.

[7] The Disbursement Account is identified on Exhibit "A" as AP Disbursement.

Bookspan, dated January 1, 2014, as amended from time to time (the "Bookspan Services Agreement").

18. Additionally, the Debtor's product fulfillment services are performed by Totally Awesome Warehouse LLC ("TAW") pursuant to that certain Fulfillment Services Agreement between the Debtor and TAW, dated January 1, 2015, as amended from time to time (the "TAW Services Agreement"). Pursuant to the TAW Services Agreement, TAW provides, among other functions: (i) invoicing, packing, shipping and processing returns of merchandise ordered by customers; (ii) inventory storage and maintenance; and (iii) delivering excess inventory to the Debtor's inventory liquidators for sale or as otherwise directed by the Debtor for disposal (the "TAW Services").

19. As discussed in the Affidavit, the Bookspan Services Agreement, the TAW Services Agreement, as well as certain of the Debtor's various other services agreement, are necessary and critical for the smooth and orderly operation of the Debtor's business.[8] The Debtor makes monthly payments to Bookspan and TAW pursuant to the terms of their respective services agreements with the Debtor for services rendered.

20. The Debtor will continue to maintain records with respect to all transfers between and among the Bank Accounts so that all transactions are accurately recorded and readily ascertainable. The Debtor is able to trace funds through the Cash Management System, and the Debtor is able to track and reconcile payments on its behalf. The Debtor therefore requests that the Court authorize it to continue to use its existing Cash Management System, and

---

[8] The Debtor intends to continue to use the services provided under the Bookspan Services Agreement and TAW Services Agreement, but are not seeking authority at this time to pay any amounts relating to prepetition services that may be owing such agreements.

7

to transfer funds into, out of, and through the Cash Management System using the Ordinary Transfer Methods.

<u>Continued Use of the Cash Management System is Warranted</u>

21.    The Debtor's current Cash Management System enables it to conduct its operations efficiently and effectively and is essential to the administration of the Chapter 11 Case. The Debtor submits that the current Cash Management System constitutes ordinary, usual and essential business practices and is similar to those used by other similar corporate enterprises. The Cash Management System benefits the Debtor in significant ways, including, *inter alia*, the ability to (a) control corporate funds centrally, (b) ensure the maximum availability of funds when necessary, and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance information.

22.    Allowing the existing Cash Management System to remain in place will facilitate a smoother transition into chapter 11 and will aid the Debtor's restructuring efforts. Notably, the Cash Management System includes the necessary accounting controls to enable the Debtor to trace amounts through the system and ensure that all transactions are adequately documented and readily ascertainable. Absent the Debtor's ability to continue to use its Cash Management System, it may be difficult for the Debtor to accurately track the location, sources and uses of its cash.

23.    Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unnecessary oversight by its creditors or the court. <u>See, e.g.</u>, <u>Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)</u>, 114 F.3d 379, 384 (2d Cir. 1997); <u>Chaney v.</u>

Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997); In re Enron Corp., No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003). Included within the purview of section 363(c)(1) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to its Cash Management System, as described above.

24. The Debtor submits that the relief requested herein is appropriate and within the authority of this Court. A debtor's request to maintain its existing cash management system has been held to be entirely consistent with section 363(c)(1) of the Bankruptcy Code, "which allows a debtor in possession to use property of the estate in the ordinary course of business." See Charter Co. v. Prudential Ins. Co. of America (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985). Additionally, relief similar to that requested herein has routinely been granted by courts in other chapter 11 cases including, *inter alia*, In re The Great American Atlantic & Pacific Tea Company, Inc., et al., Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 20, 2015) (interim order); In re NII Holdings, Inc., et al., Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Sept. 16, 2014); In re Dewey & LeBoeuf LLP, Case No. 12-12321 (MG) (Bankr. S.D.N.Y. May 29, 2012); In re Blockbuster Inc., et al., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Sept. 23, 2010).

25. Under the circumstances and in light of the Debtor's belief that the continued use of the Cash Management System is in the best interest of its estate and creditors,

the Debtor requests that the Court authorize the Debtor to continue using the Cash Management System, including the related Bank Accounts.

### Prepetition Payment Obligations

26. By separate motions filed concurrently herewith, the Debtor has sought authority to pay certain prepetition obligations. Unless otherwise ordered by this Court, the Banks may not honor or pay any check issued on account of a prepetition payment obligation. Accordingly, the Debtor requests that the Court authorize the Banks to honor any checks issued on account of prepetition claims where this Court has specifically authorized such checks to be honored. The Banks shall not be liable to any party on account of following the Debtor's instructions or representations regarding which checks should be honored.

### Maintenance of the Existing Bank Accounts and Business Forms Is Warranted

27. The United States Trustee (the "U.S. Trustee") has adopted certain guidelines (the "U.S. Trustee Guidelines") to assist the U.S. Trustee in supervising the administration of chapter 11 cases. The U.S. Trustee Guidelines require chapter 11 debtors to, among other things:

   i. close all existing bank accounts and open new accounts which must be designated debtor in possession bank accounts;

   ii. establish and maintain separate debtor in possession accounts for the payment of taxes and separate debtor in possession accounts for cash collateral; and

   iii. obtain and utilize new checks for all debtor in possession accounts which bear the designation "Debtor in Possession" and contain certain other information related to the chapter 11 case.

28. Notwithstanding the U.S. Trustee Guidelines, given the degree of interconnectedness of its Cash Management System, the Debtor believes that continued use of the Bank Accounts is essential to a smooth and orderly transition into chapter 11. By the

10

preservation of continuity and avoidance of the disruption and delay to the Debtor's collection and disbursement procedures that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest (including customers and vendors) will be best served by allowing the continued use of the Bank Accounts in their current form. Accordingly, the Debtor hereby seeks a waiver of the requirement to close its Bank Accounts and open new postpetition disbursement accounts.

29. In addition, the Debtor hereby seeks a waiver of the requirement to establish specific bank accounts for tax payments, and to hold cash collateral. The Debtor believes that its tax obligations can be funded most efficiently out of, and cash collateral can be held in, the existing Bank Accounts; and that the U.S. Trustee can adequately monitor the flow of funds into, between, and out of such accounts; and that the creation of new debtor in possession accounts designated solely for tax obligations or cash collateral would be unnecessary and inefficient.

30. Moreover, to minimize administrative expense and delay, the Debtor requests authority to continue to use its correspondence and business forms, including, but not limited to, checks, letterhead, envelopes, and other business documents (collectively, the "Business Forms"), substantially in the same format as existing immediately prior to the Petition Date, with a stamp reference to its status as debtor in possession; provided, however, that upon depletion of the Debtor's Business Forms, the Debtor will obtain new business forms reflecting its status as debtor in possession; and, provided further, however, that as soon as practicable after the Petition Date, the Debtor will note its status as debtor in possession on checks that are electronically printed and treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession.

31. The Debtor believes that the cost, delay and administrative burden of preparing new Business Forms, as well as the confusion that such new forms could cause for the Debtor's customers and vendors, is unnecessary and could be harmful to this estate. Further, the Debtor believes that no creditors will be harmed by virtue of the continued use of Business Forms, as all creditors will be notified of the Debtor's status as debtor in possession.

32. Additionally, as described above, the Debtor's services agreements with Bookspan and TAW and certain of its other vendors are essential to its ongoing operations. Accordingly, it is imperative that the Debtor be allowed to continue to pay for the services provided under the Bookspan Services Agreement and TAW Services Agreement pending the Debtor's decision to assume or reject those agreements under section 365 of the Bankruptcy Code. The continued performance by the Debtor and counterparties to these agreements in the ordinary course pending such decision will aid in preserving the Debtor's assets for the benefit of its estate. Thus, the Debtor request that it be authorized to continue to use the Cash Management System to pay postpetition fees associated with the Bookspan Services Agreement and the TAW Services Agreement in the ordinary course.

Compliance with Section 345 of the Bankruptcy Code

33. Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires the estate to obtain from the entity with which the money is deposited,

12

or invested, a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise. 11 U.S.C. § 345(b).

34. Here, the Bank Accounts[9] are maintained at a Bank that has been approved by the U.S. Trustee as an authorized depository.[10] Accordingly, the Debtor believes that any funds that are deposited in those accounts are secure and that the Debtor is in compliance with section 345 of the Bankruptcy Code. It should also be noted that the Bank Accounts – to the extent they contain an amount less than or equal to $250,000 – are insured by the United States government through the FDIC general deposit insurance rules.[11]

**Immediate Relief Is Necessary to Avoid Immediate and Irreparable Harm**

35. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the Second Circuit instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (quoting N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)). Further, the "harm must be shown to be actual and imminent, not remote or speculative." Id. at 214. See also Rodriguez v. DeBuono,

---

[9] None of the Debtor's Bank Accounts are investment accounts.

[10] To the extent the Debtor becomes aware of Bank Accounts that are not listed on "Exhibit A" and that are not maintained at Banks approved by the U.S. Trustee Guidelines, the Debtor will transfer funds in those Bank Accounts to an authoirzied depository in the Southern District of New York in compliance with the U.S. Trustee Guidelines.

[11] The Debtor does not currently have excess cash to invest, as all funds generated by the Debtor's business are held in the Concentration Account and then disbursed, either directly to a creditor or into the Disbursement Account, to fund expenses and payments associated with on going operations. To the extent excess funds are generated for investment, the Debtor will either comply with the U.S. Trustee Guidelines regarding investments or seek a waiver of such guidelines.

13

175 F.3d 227, 234 (2d Cir. 1998). The Debtor submits that for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Second Circuit.

**Waiver of Stay Under Bankruptcy Rule 6004(h)**

36. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

37. Any objection to the relief requested in this Motion on a final basis must (a) be filed in writing with the Court, at One Bowling Green, New York, New York 10004-1408, by 4:00 p.m. (New York time) on the date that is 21 days after the entry of the interim order (the "Objection Deadline") and (b) be served so as to be actually received by the following parties by the Objection Deadline: (i) the Debtor; (ii) counsel to the Debtor, Griffin Hamersky P.C., 485 Madison Avenue, 7th Floor, New York, NY 10022, Attn: Scott A. Griffin, Esq. and Michael D. Hamersky, Esq.; (iii) the United States Trustee, Attn: Andrea Schwartz, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; (iv) the parties listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), or if any official committee of unsecured creditors has been appointed, counsel to such committee; (v) all parties listed on the Debtor's list of creditors

holding the top five (5) largest secured claims under Schedule B of the Affidavit; and (vi) counsel to any other official committee appointed in this Chapter 11 Case.

38. If any objections are timely filed and received, the Debtor requests that a hearing should be held to consider such objections at the first regularly scheduled omnibus hearing in this Chapter 11 Case. The Debtor further requests that the interim order should remain in effect until such hearing.

39. If no objections are timely filed and served as set forth herein, the proposed interim order should be deemed a final order with no further notice or opportunity to be heard afforded to any party.

## Notice

40. Notice of this Motion has been provided either by facsimile, electronic transmission, overnight delivery, or hand delivery to: (i) the United States Trustee; (ii) the United States Attorney for the Southern District of New York; (iii) the Internal Revenue Service; (iv) the New York State Department of Taxation and Finance; (v) the Securities and Exchange Commission; (vi) the parties listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (vii) all parties listed on the Debtor's list of creditors holding the top five (5) largest secured claims under Schedule B of the Affidavit; (viii) the Debtor's prepetition banking institutions; and (ix) any parties required to be served under any applicable Bankruptcy Rule or Local Rule. The Debtor submits that, under the circumstances, no other or further notice is necessary.

## No Prior Request

41. No prior request for the relief requested herein has been made to this or any other Court.

## **Conclusion**

**WHEREFORE**, the Debtor respectfully requests this Court enter interim and final orders, substantially in the forms annexed hereto as Exhibits "C" and "D", respectively, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:   New York, New York
         August 10, 2015

GRIFFIN HAMERSKY P.C.

By /s/ Scott A. Griffin
Scott A. Griffin
Michael D. Hamersky
485 Madison Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 710-0338
Facsimile: (212) 710-0339

Proposed Counsel for the Debtor
and Debtor in Possession