**GRIFFIN HAMERSKY P.C.**
485 Madison Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 710-0338
Facsimile:  (212) 710-0339
Scott A. Griffin
Michael D. Hamersky

Proposed Counsel for the Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                                :
In re:                                                                        :         Chapter 11
                                                                                :
FILMED ENTERTAINMENT INC.,                          :
                                                                                :         Case No. 15-_____(   )
                                        Debtor.[1]                    :
                                                                                :
-----------------------------------------------------------------X

# DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a), 506, 507(a)(7), 553, 1107 AND 1108 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO (I) MAINTAIN CERTAIN CUSTOMER PROGRAMS; AND (II) HONOR OR PAY RELATED PREPETITION OBLIGATIONS TO ITS CUSTOMERS

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby moves this Court (the "Motion") for entry of interim and final orders, pursuant to sections 105(a), 506, 507(a)(7), 553, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), (A) authorizing the Debtor to (i) maintain certain customer programs; and (ii) honor or pay related prepetition obligations to its customers, and (B) scheduling a final hearing to be held on or after a date that is twenty-one (21) days after the date of this Motion.

In support of the Motion, the Debtor relies upon and incorporates by reference the *Affidavit of Glenn Langberg*, filed under Local Bankruptcy Rule 1007-2 in support of the

---

[1]    The last four digits of the Debtor's federal tax identification number are 3867.

Debtor's chapter 11 petition and various first day applications and motions (the "Affidavit"), filed with the Court concurrently herewith. In further support of the Motion, the Debtor respectfully represents:

## Jurisdiction and Venue

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 506, 507(a)(7), 553, 1107 and 1108 of the Bankruptcy Code.

## Background

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition (the "Chapter 11 Case") in this Court for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor continues to manage and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. The factual background regarding the Debtor, including its operations, its capital and debt structure, and the events leading to the filing of this Chapter 11 Case, is set forth in detail in the Affidavit, which is deemed fully incorporated herein by reference.[2]

## Relief Requested

6. By this Motion, the Debtor seeks entry of interim and final orders authorizing the Debtor to (i) continue to operate club programs, and the related customer rewards

---

[2] Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Affidavit.

program, with its members (the "Customer Programs"), including the authority to continue, renew, replace, and/or terminate one or more Customer Programs and implement new Customer Programs, in each case, as the Debtor deems appropriate in the ordinary course of business; and (ii) honor prepetition obligations owed to customers on account of, without limitation, purchases, shipments, returns, refunds, credits, exchanges, and promotions (collectively, the "Customer Obligations"), thereby ensuring and maintaining customer satisfaction and loyalty without interruption throughout the duration of this Chapter 11 Case.

7. The Debtor further requests that all banks and other financial institutions on which checks to its customers are deposited and drawn be authorized and directed to receive, process, honor, and pay any and all such checks, whether presented prior to or after the Petition Date.

**Basis for Relief**

The Customer Programs

8. In the ordinary course of its business, the Debtor offers DVD and TV negative option[3] club programs to its members (the "Club"). Under these programs, customers enroll online in either the Debtor's DVD or TV Columbia House-branded Club and agree to the terms of membership. In conjunction with the programs, a customer can take advantage of a special enrollment offer (e.g., "Get one free DVD with membership"), while agreeing to purchase a certain number of DVDs within a prescribed time period (e.g., one DVD at regular Club price within one year of joining).

---

[3] Under the "negative option" a member is notified that the club has selected one or more movies or television series to be featured for a designated period of time for purchase by the member. Members receive information about the selections either via email or via physical catalogues. The member then has a specified number of days to decline the selection; if a member does not respond by the specified date, the club automatically ships the selections to the member and invoices him or her.

3

9. Significantly, club membership entitles members to purchase all DVDs and merchandise at special members-only prices through the Club's website and catalogs. The Debtor adds shipping and processing charges (and sales tax, where applicable) to all orders, unless indicated otherwise in special offers or promotions. Members agree to receive either a paper catalog or email every month announcing the featured DVD of the month (the "Director's Selection"). Members can then reply via a paper reply card, email, online at the Club website, or phone, and advising the Debtor as to whether they would like to decline receipt of the Director's Selection or order other products. If a member does not notify the Debtor that it does not wish to receive the Director's Selection by the date specified, the Debtor ships the Director's Selection automatically, and, depending on the payment method on the account, either charges the member's credit card or bills the cost of the shipment to the member's Club account. If the Director's Selection is billed to the account, the Debtor sends an invoice to the member with the shipment. The invoice is payable upon receipt.

10. Additionally, in the ordinary course of business, the Debtor provides its customers with a customer rewards program (the "Bonus Points Program"). The Bonus Points Program is a basic no-fee program available to the Debtor's Club members that are in good standing. Under the Bonus Points Program, members earn two points for each DVD they purchase at the purchase price of $7.49 or higher. Members also earn two bonus points ("Bonus Points") for each DVD purchased using redeemed bonus points with a purchase price over $7.49. Each Bonus Point is equal to $1.00 off any DVD in a member's order and may be used to reduce the price of each DVD purchased by a member up to a maximum of 75% of the Club price.

11. A member's Bonus Points balance is updated on a monthly basis (no later than the fifth day of each month), with points earned by members available for redemption

4

immediately following the Debtor's update of the member's balance. The Bonus Points balance, however, is subject to expiration if the member has failed to make a purchase in the DVD and/or TV Clubs for a period of twelve months or more.

<u>The Customer Obligations</u>

12. Prior to the Petition Date, and in the ordinary course of its business, the Debtor received payments on account of the Customer Programs for the sale of goods and services that the Debtor has not yet delivered to its Club members. The uninterrupted satisfaction of these outstanding Customer Obligations is crucial to continued consumer confidence and customer loyalty.

13. Certain Club members also hold contingent claims against the Debtor in connection with the Customer Programs for refunds, returns, exchanges, credit balances and account adjustments relating to goods – namely, DVDs – sold to customers through the Club in the ordinary course of business prior to the Petition Date (collectively, the "Customer Claims").[4]

<u>The Critical Nature of the Customer Programs</u>

14. The success and viability of the Debtor's business is dependent upon the patronage and loyalty of its customers. In this regard, the Debtor's Customer Programs are critical, and any delay in honoring the Debtor's obligations thereunder will severely and irreparably impair customer relations. Any failure to honor the Customer Obligations, including the Customer Claims, for even a brief time, may well drive away valuable customers, thereby harming the Debtor's estate and the value of its going concern operations.

---

[4] As of the Petition Date, the Debtor estimates that the aggregate amount of Customer Claims is approximately $373,000.

15. Accordingly, the Debtor seeks authority to (i) continue the Customer Programs; and (ii) honor the Customer Obligations, including the Customer Claims.

**Applicable Authority**

16. The relief requested in the Motion is justified under the Bankruptcy Code for a number of reasons. First, there is no prejudice to general unsecured creditors since (i) Customer Claims are likely entitled to priority status, and/or (ii) many of the Customer Claims holders may have accounts receivable owing to the Debtor, and therefore may attempt to recoup their claims from, or offset their claims against, the amounts owed to the Debtor.[5] Such customers, therefore, may be secured creditors of the Debtor. Second, the Debtor believes that it must maintain the Customer Programs and honor legitimate Customer Obligations in order to maximize value for its estate and fulfill its fiduciary obligations under the Bankruptcy Code. Third, payment of Customer Claims is necessary to maintain the value of the Debtor's business, which is critical in conjunction with any potential sale of the Debtor's assets and, thus, appropriate under section 105 of the Bankruptcy Code and the doctrine of necessity.

Section 507(a)(7) of the Bankruptcy Code
Likely Grants Priority Status to the Customer Claims

17. A portion of the Debtor's obligations to its customers may be entitled to priority treatment under section 507(a)(7) of the Bankruptcy Code, which grants a seventh-level priority to

> allowed unsecured claims of individuals, to the extent of $2,775 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services,

---

[5] As this Court is aware, customers exercising the remedy of recoupment would not be subject to the automatic stay pursuant to section 362 of the Bankruptcy Code.

> for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(7). Prepetition payments collected by the Debtor under the Customer Programs fall within this priority category. Indeed, it is likely that the Debtor's customers who participated in the Customer Programs will be entitled to priority status on account of Customer Claims where the Debtor received funds from those customers but has not yet delivered the underlying goods. Accordingly, payment of the Customer Claims would not prejudice the Debtor's unsecured creditors.

> Those Customers With Legitimate Customer Claims Are Likely Secured Creditors or, Alternatively, Entitled to Recover the Full Value of Their Claim Through Recoupment

18. The Debtor believes that many of its customers who participate in the Customer Programs may have outstanding accounts receivable owed to the Debtor as of the Petition Date. In the event that the Debtor failed to honor the valid Customer Obligations and/or Customer Claims, the Debtor believes that these customers would assert their right to offset any amounts owed to them by the Debtor under the Customer Programs against any receivables that such customers owed to the Debtor.

19. To the extent that both of such obligations arose prior to the Petition Date, the Bankruptcy Code would allow setoff rights. See 11 U.S.C. § 553. Furthermore, section 506 of the Bankruptcy Code would designate customers with these setoff rights as secured creditors. See 11 U.S.C. § 506. Thus, payment to such customers would be required under any chapter 11 plan prior to any distribution to the Debtor's unsecured creditors. See, e.g., 11 U.S.C. § 1129(b)(2)(B)(ii). Such payment would, therefore, not prejudice the Debtor's unsecured creditors.

20. Even if the customers cannot exercise rights of setoff because, for example, the relevant Customer Obligation arose only after the customer's purchase of the Debtor's goods, the Debtor believes that a majority of its customers to whom the Debtor owes valid Customer Obligations and/or Customer Claims may have a right of recoupment with respect to such Customer Obligations. For recoupment to apply, the debts owed by the customer and by the Debtor must "arise out of a *single integrated transaction* so that it would be *inequitable* for the debtor to enjoy the benefits of that transaction without also meeting its obligations." Malinowski v. New York State Dep't of Labor, 156 F.3d 131, 133 (2d Cir. 1998) (emphasis added) (quoting In re Univ. Med. Ctr., 973 F.2d 1065, 1081 (3d Cir. 1992)).

21. Because customers that might not be able to assert setoff rights, may nonetheless be able to establish a valid remedy through recoupment, such customers would be in the same position as those customers with setoff rights, *i.e.,* entitled to payment in full. Moreover, the automatic stay of section 362 of the Bankruptcy Code would not prevent such customers from exercising their valid recoupment defenses. See Malinowski, 156 F.3d at 133. Thus, the payment of such Customer Claims would likewise be required under any plan of reorganization and would not prejudice the Debtor's unsecured creditors.

22. In the event that the Customer Claims are not paid and the customers resort to asserting setoff rights or recoupment defenses, the Debtor would be required to expend time, expenses, and resources either responding to such customers' lift stay requests to assert setoff rights or otherwise challenging, to the extent appropriate, any invalid recoupment defense asserted by the customers. The Debtor believes that it would thereby incur unnecessary administrative expenses – in addition to the ire of its customers – to the detriment of the Debtor's estate.

23. In contrast, honoring valid Customer Obligations and maintaining the Customer Programs as set forth herein, will provide the Debtor with a means of efficiently processing the Customer Obligations and/or Customer Claims, and reduce the administrative expenses that the Debtor would otherwise face if compelled to challenge customers' exercise of purported setoff rights or recoupment defenses. In addition, as noted above, such payment will allow the Debtor to maintain positive relations with its customers and preserve the value of its estate. Accordingly, the payments contemplated herein will not diminish the assets of the Debtor's estate to the detriment of general unsecured creditors. Moreover, such payment is consistent with the priority of payment of claims set forth under the Bankruptcy Code.

> The Debtor Must Be Permitted to Continue its Customer Programs and
> Honor Customer Obligations to Satisfy Its Fiduciary Obligation of
> <u>Maximizing Value to the Estate Under Sections 1107 and 1108 of the Bankruptcy Code</u>

24. The Debtor, operating its business as debtor in possession under sections 1107 and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." <u>In re CoServ, L.L.C.</u>, 273 B.R. 487, 497 (Bankr. N.D.Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." <u>Id.</u>

25. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." <u>Id.</u> The <u>CoServ</u> court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." <u>Id.</u> at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

26. Honoring the Customer Obligations and maintaining the Customer Programs meets each element of the CoServ court's standard. As described above, the success and ultimate viability of the Debtor's business is dependent upon customer loyalty. In the Debtor's business judgment, the uninterrupted maintenance of its Customer Programs is essential to maintaining such loyalty. Any disruption and adverse publicity that would necessarily result from the failure to honor Customer Obligations or from discontinuing its Customer Programs outright would threaten the Debtor's customer base and ultimately damage the Debtor's enterprise value. The Debtor believes that it can only meet its fiduciary duties as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code by maintaining the Customer Programs and by honoring legitimate Customer Obligations.

Maintenance of the Customer Programs Is Also Appropriate
Under Section 105 of the Bankruptcy Code and the Doctrine of Necessity

27. Continuing the Customer Programs and honoring related Customer Obligations in the ordinary course may also be authorized under section 105(a) of the Bankruptcy Code and the "doctrine of necessity". Under section 105 of the Bankruptcy Code, this Court "may issue any order… that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). For the reasons set forth above, and in light of the need for the Debtor to preserve the going concern value of its business through, among other

things, the maintenance of the Customer Programs, the relief requested herein is proper and should be granted.

28. The continuation of the Customer Programs is further supported by the doctrine of necessity. This doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Just For Feet, Inc., 242 B.R. 821, 826 (Bankr. D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[6] In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

29. The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. See Just For Feet, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by

---

[6] The Court's power to use the doctrine of necessity in Chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport, C & S.W. R. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. See id. at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New Eng. Ry., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

11

refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (discussing the necessity of payment doctrine as the applicable standard for the case); In re Ionosphere Clubs, Inc., 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.").

30. Courts have routinely granted the same or substantially similar relief to that requested in this Motion. See, e.g., In re dELiA*s, Inc., Case No. 14-236787 (RDD) (Bankr. S.D.N.Y. Dec. 24, 2014); In re American Roads LLC, Case No. 13-12412 (BRL) (Bankr. S.D.N.Y. July 26, 2013); In re Broadview Networks Holdings, Inc., Case No. 12-13581 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2012); In re Houghton Mifflin Harcourt Publ'g Co., Case No. 12-12171 (REG) (Bankr. S.D.N.Y. Jun. 22, 2012); In re Blockbuster Inc., et al., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Sept. 23, 2010).

31. The success and ultimate viability of the Debtor's business is dependent upon customer loyalty. In the Debtor's business judgment, the uninterrupted maintenance of its Customer Programs is essential to maintaining such loyalty. Any disruption and adverse publicity that would necessarily result from the failure to meet Customer Obligations or from discontinuing its Customer Programs outright would threaten the Debtor's customer base, and reduce enterprise value to the detriment of the Debtor's estate and all parties in interest.

32. Based on the foregoing, the Debtor submits that entry of an order authorizing it to continue the Customer Programs and honor the Customer Obligations is necessary and appropriate to maintain the Debtor's going concern value.

33. Nothing herein shall be deemed an assumption or adoption of any policy, program, practice, contract or agreement pursuant to section 365 of the Bankruptcy Code or shall otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor or a waiver of the Debtor's right to dispute any claim.

34. The foregoing demonstrates the substantial benefits that will inure to the Debtor's estate as a result of its maintaining and continuing the Customer Programs. The Debtor, however, does not at this time request blanket authorization to assume as executory contracts all prepetition obligations to customers. Rather, the Debtor simply requests authorization to continue the Customer Programs. The Debtor believes, in the exercise of its business judgment, that the Customer Programs are necessary, and in the best interests of its estate, and creditors.

**Immediate Relief is Necessary to Avoid Immediate and Irreparable Harm**

35. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the Second Circuit instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (quoting N.Y. Pathological & X-Ray

Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)).  Further, the "harm must be shown to be actual and imminent, not remote or speculative."  Id. at 214.  See also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998).  The Debtor submits that for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Second Circuit.

**Waiver of Stay Under Bankruptcy Rule 6004(h)**

36. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

37. Any objection to the relief requested in this Motion on a final basis must (a) be filed in writing with the Court, at One Bowling Green, New York, NY 10004-1408, by 4:00 p.m. (New York time) on the date that is 21 days after the entry of the interim order (the "Objection Deadline") and (b) be served so as to be actually received by the following parties by the Objection Deadline:  (i) the Debtor; (ii) counsel to the Debtor, Griffin Hamersky P.C., 485 Madison Avenue, 7th Floor, New York, NY 10022, Attn: Scott A. Griffin, Esq. and Michael D. Hamersky, Esq.; (iii) the United States Trustee, Attn: Andrea Schwartz, Esq., U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014; (iv) the parties listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), or if any official committee of unsecured creditors has been

appointed, counsel to such committee; (v) all parties listed on the Debtor's list of creditors holding the top five (5) largest secured claims under Schedule B of the Affidavit; and (vi) counsel to any other official committee appointed in this Chapter 11 Case.

38. If any objections are timely filed and received, the Debtor requests that a hearing should be held to consider such objections at the first regularly scheduled omnibus hearing in this Chapter 11 Case. The Debtor further requests that the interim order should remain in effect until such hearing.

39. If no objections are timely filed and served as set forth herein, the proposed interim order should be deemed a final order with no further notice or opportunity to be heard afforded to any party.

### Notice

40. Notice of this Motion has been provided either by facsimile, electronic transmission, overnight delivery, or hand delivery to: (i) the United States Trustee; (ii) the United States Attorney for the Southern District of New York; (iii) the Internal Revenue Service; (iv) the New York State Department of Taxation and Finance; (v) the Securities and Exchange Commission; (vi) the parties listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (vii) all parties listed on the Debtor's list of creditors holding the top five (5) largest secured claims under Schedule B of the Affidavit; (viii) the Debtor's prepetition banking institutions; and (ix) any parties required to be served under any applicable Bankruptcy Rule or Local Rule. The Debtor submits that, under the circumstances, no other or further notice is necessary.

### No Prior Request

41. No prior request for the relief requested herein has been made to this or any other Court.

**Conclusion**

**WHEREFORE**, the Debtor respectfully requests this Court enter interim and final orders, substantially in the forms annexed hereto as Exhibit "A" and Exhibit "B", respectively, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: New York, New York
       August 10, 2015

                                   GRIFFIN HAMERSKY P.C.

                                   By /s/ Scott A. Griffin
                                   Scott A. Griffin
                                   Michael D. Hamersky
                                   485 Madison Avenue, 7th Floor
                                   New York, New York 10022
                                   Telephone: (212) 710-0338
                                   Facsimile: (212) 710-0339

                                   Proposed Counsel for the Debtor
                                   and Debtor in Possession