# SCHEDULE 1

# BIDDING PROCEDURES
# AND TERMS AND CONDITIONS OF SALE

Filmed Entertainment Inc. ("FEI" or the "Debtor") contemplates its entry into an asset purchase agreement (the "Purchase Agreement") with the Successful Bidder (as defined below), also referred to herein as the "Buyer," for the sale of substantially all of its assets (collectively, the "Acquired Assets").  The Debtor is currently soliciting the highest and/or best bid for the sale of the Acquired Assets (the "Sale").[1]

1.  Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") with respect to the Sale by the Debtor of the Acquired Assets.  On September 28, 2015, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") granting the Bidding Procedures Motion insofar as it sought the approval of the Bidding Procedures to be employed in connection with the solicitation of highest and/or best bids and an auction (the "Auction") for the Sale of the Acquired Assets.

2.  Relevant Dates

| | |
|---|---|
| Bid Deadline: | October 15, 2015 (4:00 p.m. New York Time) |
| Auction: | October 16, 2015 (10:00 a.m. New York Time) |
| Objection Deadline: | October 19, 2015 (4:00 p.m. New York Time) |
| Sale Hearing: | October 20, 2015 (10:00 a.m. New York Time) |

3.  Acquired Assets to be Sold Free and Clear

The Debtor is offering for Sale the Acquired Assets.  Except as otherwise provided in the Purchase Agreement, with respect to the Sale, all of the Seller's right, title and interest in and to the Acquired Assets shall be sold free and clear of all liens, claims and encumbrances, security interests and other restrictions on transfer (collectively, the "Liens") to the extent permitted by section 363 of the Bankruptcy Code and other applicable law (except as otherwise expressly provided in the Purchase Agreement) with such Liens to attach to the proceeds of the Sale.

Except as expressly provided in the Purchase Agreement, the Sale of the Acquired Assets shall be on an **"as is, where is"** basis and without representations or warranties of any kind, nature or description by the Debtor or its agents.

---

[1]  Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Purchase Agreement.

**THE DEBTOR RESERVES THE RIGHT, IN CONSULTATION WITH THE CREDITORS' COMMITTEE (AS DEFINED BELOW), TO DETERMINE WHETHER ANY BID IS BETTER, IF NOT HIGHER, THAN ANOTHER BID SUBMITTED DURING THE AUCTION. THE DEBTOR MAY CONSIDER A VARIETY OF FACTORS IN MAKING THIS DECISION, INCLUDING WITHOUT LIMITATION, WHETHER THE BID IS MATERIALLY MORE BURDENSOME THAN THE TERMS OF THE PURCHASE AGREEMENT OR A MODIFIED PURCHASE AGREEMENT (AS DEFINED BELOW), ANY PROPOSED CONDITIONS TO CLOSING, WHETHER THE BID INCLUDES ANY NON-CASH COMPONENTS, THE TIMING OF CLOSING OF THE PROPOSED TRANSACTION, AND ANY OTHER FACTORS DEEMED RELEVANT.**

4. Mailing the Auction and Sale Hearing Notice

The Debtor shall provide notice of the Auction and Sale of the Acquired Assets (the "Sale Notice") together with a copy of these Bidding Procedures by first class mail, postage prepaid, to: (a) counsel for the official committee of unsecured creditors (the "Creditors' Committee"); (b) counsel to the Debtor's secured creditor, HCL America Inc.; (c) the United States Trustee for the Southern District of New York; (d) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) all counter-parties to the Assigned Contracts; (f) the following governmental authorities: (i) the United States Attorney for the Southern District of New York; (ii) the Pension Benefit Guaranty Corporation (iii) the Internal Revenue Service; and (iv) the New York State Department of Taxation and Finance; (g) counsel to the Successful Bidder; (h) all parties who are known to assert a Lien on any of the Acquired Assets; and (i) all parties identified by the Debtor as potentially having an interest in acquiring the Acquired Assets (collectively, the "Notice Parties"); and a copy of the Sale Notice to all creditors of the Debtor who are listed on the Schedules filed by the Debtor or who have filed proofs of claim against the Debtor's estate ("Scheduled and Filed Creditors").

Any other party in interest that wishes to receive a copy of the Bidding Procedures Order and/or the Bidding Procedures Motion may make such request in writing to Scott A. Griffin, Esq., Griffin Hamersky P.C., 485 Madison Avenue, 7th Floor, New York, NY 10022, by telephone: (212) 710-0338, or via email at sgriffin@grifflegal.com.

5. Confidentiality Agreement / Due Diligence

Any entity that wishes to conduct due diligence with respect to the Acquired Assets must (i) deliver to the Debtor an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor and on terms no less favorable than the agreement to be provided by the Debtor to such entity, and (ii) deliver to the Debtor a written non-binding expression of interest to purchase the Acquired Assets, reasonably acceptable to the Debtor, which the Debtor will share with the Creditors' Committee.

Interested parties that comply with the foregoing (each such entity referred to as a "Potential Bidder"), shall be permitted to conduct diligence with respect to the Acquired Assets, provided, however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

6. Qualification of Bids and Bidders

In order to participate in the bidding process and to have a bid considered by the Debtor, each Potential Bidder must deliver a written, irrevocable offer, for all or a portion of the Acquired Assets, satisfying the below criteria, which the Debtor will share with the Creditors' Committee. **A BID MAY BE MADE FOR ALL OR ONLY A PORTION OF THE ACQUIRED ASSETS.** A "Qualified Bidder" is a Potential Bidder that delivers a binding bid that in the Debtor's discretion, after consultation with the Creditors' Committee, satisfies the following conditions (a "Qualified Bid"):

(a) <u>Bid Deadline</u>. Each Bid Package (as defined below) must be delivered in written form to: (i) counsel to the Debtor, Griffin Hamersky P.C., Attn: Scott A. Griffin, Esq., 485 Madison Avenue, 7th Floor, New York, NY 10022, and (ii) counsel for the Creditors' Committee, Lowenstein Sandler LLP, Attn: S. Jason Teele, Esq., 65 Livingston Avenue, Roseland, New Jersey 07068, and (iii) if such Bid includes the assumption of any liabilities associated with the Pension Plans (as defined below), the Pension Benefit Guaranty Corporation, 1200 K Street, N.W., Washington, D.C. 20005 (Attn.: Elisabeth B. Fry, fry.elisabeth@pbgc.gov), and in each case so as to **actually be received no later than 4:00 p.m. (New York Time) on October 15, 2015 (the Bid Deadline)**.

(b) <u>Bid Package</u>. Each bid must include (collectively, the "Bid Package"): (i) a written and signed irrevocable offer stating that (x) the bidder offers to consummate a sale transaction, for all or a portion of the Acquired Assets, on terms and conditions no less favorable than in the Purchase Agreement and in an amount at least equal to the Minimum Bid (as defined below), (y) confirming that the bid will remain irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order (as defined below), and (ii) closing with the Successful Bidder and (z) a statement indicating that the bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representation except as expressly provided with Modified Purchase Agreement (as defined below); (ii) an executed copy of the Purchase Agreement as modified by the bidder in accordance with its bid (the "Modified Purchase Agreement"); and (iii) an electronic markup of the Purchase Agreement clearly showing the revisions in the Modified Purchase Agreement (formatted as a Microsoft Word document or such other word processing format acceptable to the Debtor). The Debtor, in consultation with the Creditors' Committee, shall determine whether any Modified Purchase Agreement that modifies the Purchase Agreement in any respect beyond the identity of the purchaser is a Qualified Bid.

(c) <u>Minimum Bid</u>. The amount of the purchase price in such bid must provide for net cash (or cash equivalent) that is at least in the amount of: $50,000 more than the base price contained in the Purchase Agreement (the "Minimum Bid").

(d) <u>Financial Information</u>. The Bid Package must contain such financial and other information that will allow the Debtor to make a determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, including any proposed conditions to Closing and adequate assurance of such

-3-

bidder's ability to perform under any Assigned Contracts and to pay all cure amounts required to assume and assign any such Assigned Contracts.

(e)     <u>Bid Protections</u>.  The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment.

(f)     <u>Identity of Bidders</u>.  Each Potential Bidder must fully disclose the identity of each entity that will be bidding for the Acquired Assets, as well as disclose the organization, form and the business conducted by each entity and what, if any, connection the Potential Bidder has with the Debtor, its affiliates, parents, subsidiaries, predecessors, successors, or any other related entities.  Potential Bidders shall be required to provide such additional information as the Debtor may require, in consultation with the Creditors' Committee, regarding a bidder's ability to satisfy the requirements of the transaction contemplated by the Modified Purchase Agreement.

(g)     <u>Due Diligence</u>.  The bid must not contain any contingencies of any kind, including, among others, obtaining (i) financing; (ii) shareholder, board of directors or other approval; or (iii) the outcome or completion of due diligence.  Each Potential Bidder must also affirmatively acknowledge that the Potential Bidder (i) had an opportunity to conduct due diligence regarding the Acquired Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith except as expressly stated in these Bidding Procedures.

(h)     <u>Consents</u>.  Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its competing bid and to enter into and perform the Modified Purchase Agreement.

(i)     <u>Deposit</u>.  A Potential Bidder must deposit $50,000 with the Debtor in the form of a certified check or wire transfer on or before the Bid Deadline (the "Deposit").  The Potential Bidder or the Backup Bidder (defined below) shall forfeit the Deposit if (i) the Potential Bidder or the Backup Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the Debtor's selection of the Successful Bidder, or (ii) the bidder is a Successful Bidder and (x) modifies or withdraws the bid without the Debtor's consent, after consultation with the Creditors' Committee, before the consummation of the Sale contemplated by the bid, or (y) breaches any of the Modified Purchase Agreement.  The Deposit shall be returned to the bidder (i) as soon as practicable if the bidder is not determined to be a Qualified Bidder or (ii) no later than five (5) business days after entry of the Sale Order if the bidder is a Qualified Bidder (who has not otherwise forfeited its Deposit), but is not the Successful Bidder or the Backup Bidder.  The Debtor will maintain any Deposit in a non-interest bearing Debtor account.

(j)     <u>As Is. Where Is</u>.  Any Modified Purchase Agreement must provide that the Sale will be on an "as is, where is" basis and without representations or warranties of any kind except and solely to the extent expressly set forth in the Modified Purchase Agreement of the

Successful Bidder.  Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid.

(k)     Pension Plans.  Each Qualified Bid must state whether or not the Qualified Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with (1) the Columbia House Pension Plan ("Columbia House Plan") and/or (2) the Pension Plan of Direct Brands, Inc. ("Direct Brands Plan", and collectively with the Columbia House Plan, "Pension Plans" or "Plans").

(l)     Allocation of Purchase Price for Certain Video Devices.[2]  Any bid for the Acquired Assets that includes some or all of the Video Devices delivered by Universal Studios Home Entertainment LLC to the Debtor prior to the Petition Date shall include a purchase price allocation for such Video Devices.  Universal Studios Home Entertainment LLC need not accept the value of such allocation and reserves the rights to object to the sale, the allocation, and to otherwise seek an order from the Court determining that the Video Devices are not property of the estate or part of the Acquired Assets and/or that the purchase price allocation is not correct.

(m)     Debtor's Considerations.  The Debtor, after consultation with the Creditors' Committee, will have the right to determine that a bid is not a Qualified Bid if the terms of the bid are materially more burdensome or conditional than the terms of the Purchase Agreement and are not offset by a material increase in purchase price, which determination may take into consideration, among other factors: (1) whether the bid requires any indemnification of such Qualified Bidder; (2) whether the bid does not provide for payment of cure costs or other cash costs of the transaction; (3) whether the bid includes a non-cash instrument or similar consideration that is not freely marketable; or (4) any other factors the Debtor, after consultation with the Creditors' Committee, may deem relevant.

The Debtor, in consultation with the Creditors' Committee, shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify bidders whether their respective bid(s) have been determined to be a Qualified Bid(s) prior to the Auction.  The Debtor, after consultation with the Creditors' Committee, may reject any bid that is on terms more burdensome or conditional than the Purchase Agreement or is otherwise contrary to the best interests of the Debtor's estate.  In addition to the requirements above, the Debtor, in consultation with the Creditors' Committee, may request any additional information from any bidder to assist the Debtor in making a determination as to whether a bid is a Qualified Bid.

---

[2]   For purposes of these Bidding Procedures, "Video Devices" shall mean "any form of video cassette, cartridge, videogram, video disc, tape or other device existing now or devised in the future, including but not limited to VHS, or DVD on which video software is recorded and, when the device is used in conjunction with playback equipment, can be exhibited visually (whether or not synchronized with sound) on the screen of a television receiver or any comparable device existing now or devised in the future or any other materials provided by Universal Studios Home Entertainment LLC to the Debtor pursuant to that certain Agreement by the parties, dated December 16, 2004 (as extended and amended from time-to-time)."

7.  Sale

If only one Qualified Bid is submitted by the Bid Deadline, the Debtor shall not hold the Auction, but may proceed with the Sale Hearing and seek approval of the Modified Purchase Agreement (as applicable) and the transactions contemplated thereby relating to such bid. In the event, that no Qualified Bids are submitted the Debtor, in consultation with the Creditors' Committee, reserves all rights with respect to the Sale, including withdrawing the Motion to approve the Sale.

8.  Auction

In the event that the Debtor timely receives more than one Qualified Bid by the Bid Deadline for all or any portion of the Acquired Assets, the Debtor shall conduct the Auction with respect to the Acquired Assets. The Auction will take place at the offices of counsel to the Debtor, Griffin Hamersky P.C., 485 Madison Avenue, 7th Floor, New York, NY 10022 on **October 16, 2015, starting at 10:00 a.m. (New York Time)**, or at such other later date and time or other place, as may be determined by the Debtor, in consultation with the Creditors' Committee, at or prior to the Auction. The Auction shall be governed by the following procedures:

(a)  Participation and Attendance.

(i) Only the Qualified Bidders that have submitted a Qualified Bid and provided a Deposit will be eligible to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction (and any attorney or other advisor for a Qualified Bidder may appear at the Auction at the discretion of the Qualified Bidder). In the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith. The Debtor, in consultation with the Creditors' Committee, will evaluate all Qualified Bids received and will select the Qualified Bid that reflects the highest and/or best offer for all or any portion of the Assets, and otherwise complies with the bid requirements set forth herein, as the "Starting Auction Bid." The Debtor, in consultation with the Creditors' Committee, may consider a variety of factors to determine the Starting Auction Bid including changes to the Purchase Agreement, the proposed assumption of any liabilities including those associated with the Pension Plans, and the Qualified Bidder's ability to consummate the Sale. At the Auction, the Debtor shall announce the material terms of each overbid and the basis for calculating the total consideration offered in each such overbid provided.

(ii) Individual members of the Creditors' Committee along with Committee Counsel may attend and observe the Auction in person; <u>provided</u>, <u>however</u>, that neither Universal Studios Home Entertainment LLC nor Paramount Home Entertainment, Inc. may attend the Auction in person but may attend the auction by telephone.

        (iii)    Individual members of the Creditors' Committee attending the Auction in person or by telephone shall be bound by the terms of the confidentiality agreement entered into by and between the Debtor and Creditors' Committee on or about September 2, 2015 or September 25, 2015, as the case may be.

        (b)    <u>Bidding</u>.  Bidding at the Auction shall commence at the amount of the Starting Auction Bid.  Qualified Bidders may then submit successive bids in increments of $50,000 (the "Bid Increment"); provided, however, that the Debtor, in consultation with the Creditors' Committee, shall retain the right to modify the Bid Increment at the Auction.  Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.

        (c)    <u>Higher and/or Better</u>. The Debtor reserves the right, in consultation with the Creditors' Committee, to determine whether any bid is better, if not higher, than another bid submitted during the Auction.  The Debtor may consider a variety of factors in making this decision, including without limitation, whether the bid is materially more burdensome than the terms of the Purchase Agreement or a Modified Purchase Agreement (as applicable), any proposed conditions to closing, whether the bid includes any non-cash components such as the proposed assumption of any liabilities including those associated with the Pension Plans, the timing of closing of the proposed transaction, and any other factors deemed relevant.

        (d)    <u>Successful Bid</u>.  The Auction shall continue until there is only one collective offer or separate offers for the Acquired Assets, that the Debtor, in consultation with the Creditors' Committee, determines, subject to Court approval, is (or are) the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (the "Successful Bid").  The bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of the Buyer, as set forth in the Modified Purchase Agreement.  Within one business day after the conclusion of the Auction (but in any event prior to the commencement of the Sale Hearing), the Successful Bidder shall complete and execute the Modified Purchase Agreement, and all contracts, instruments or other documents evidencing and containing the terms, the proposed assumption of any liabilities including those associated with the Pension Plans, and conditions upon which the Successful Bid was made.

        (e)    <u>Anti-Collusion</u>.  At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with any other bidder or potential bidder with respect to the bidding or the Sale.

        (f)    <u>Conduct of Auction</u>.  The Auction may be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid or the Debtor or its counsel may meet privately with any Qualified Bidder to negotiate the terms of its bid.  The Debtor, in consultation with the Creditors' Committee, may adopt other rules for the conduct of the Auction at the Auction which, in its judgment, will better promote the goals of the Auction.  The Creditors' Committee, through its counsel, may meet with any Qualified Bidder; provided, however, that a representative of the Debtor or its counsel is also present.  To the extent a Qualified Bidder approaches the Creditors' Committee counsel outside the presence of a representative of the Debtor or its counsel, counsel to the Creditors' Committee shall locate a representative of the Debtor or its counsel before any further

discussions with such Qualified Bidder. Individual member of the Creditors' Committee may attend and solely observe the Auction in-person, upon the execution of a confidentiality agreement; provided, however, that neither Universal Studios Home Entertainment LLC nor Paramount Home Entertainment, Inc. may attend the Auction.

(g)    Backup Bid.  At the conclusion of the Auction, the Debtor, in consultation with the Creditors' Committee, will also announce the second highest or otherwise best bid from among the Qualified Bids submitted at the Auction (the "Backup Bid").  The Qualified Bidder submitting such Backup Bid shall become the "Backup Bidder," and subject to the rights of the Successful Bidder, shall have such rights and responsibilities of the Buyer, as set forth in the Modified Purchase Agreement.  The Backup Bid shall remain open and irrevocable until the earlier of (x) ninety (90) days following entry of the Sale Order and (y) Closing of the Sale.  The Backup Bidder's Deposit will be returned by the Debtor upon consummation of the Sale of the Acquired Assets to the Successful Bidder or will be otherwise applied or forfeited as provided in Section 6(i) above if the Backup Bidder is determined to be the Successful Bidder.

(h)    Extensions/Adjournment.  The Debtor reserves its rights, in the exercise of its judgment, in consultation with the Creditors' Committee, to modify any non-material provisions of the Bidding Procedures at or prior to the Auction, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice consistent with the Purchase Agreement and Bid Procedures Order.

9.    Sale Hearing and Return of Deposits

The Successful Bid and the Backup Bid will be subject to approval by entry of an order (the "Sale Order") by the Bankruptcy Court after a hearing (the "Sale Hearing") that will take place on **October 20, 2015 at 10:00 a.m. (New York Time)**.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court.  Upon approval of the Backup Bid by the Bankruptcy Court, the Backup Bid shall remain open and irrevocable until the earlier of: (i) ninety (90) days following entry of the Sale Order, or (ii) the Closing of the Sale.

No offer shall be deemed accepted unless and until it is approved by the Bankruptcy Court.

Objections, if any, to the Sale Motion and any filed supplements thereto, shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014, Attn:  Andrea B. Schwartz, Esq.; (b) counsel for the Debtor, Griffin Hamersky P.C., 485 Madison Avenue, 7th, New York, NY 10022, Attn:  Scott A. Griffin, Esq.; and (c) counsel to the Creditors' Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn:  S. Jason Teele, Esq., so as to be **actually received by 4:00 p.m. (New York Time) on October 19, 2015** (the "Objection Deadline").  Notwithstanding the above, any party in interest may object at the Sale Hearing to the criteria used by the Debtor to select the highest or otherwise best offer for the Acquired Assets.

10. Consummation of the Sale

If for any reason the Successful Bidder fails to consummate the purchase of the Acquired Assets, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. The Debtor and the Backup Bidder are authorized to effect the sale of the Acquired Assets to the Backup Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit shall be forfeited to the Debtor and the Debtor specifically reserves the right to seek all available damages from the defaulting bidder.

11. Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Acquired Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing.

# SCHEDULE 2

| | |
|---|---|
| **AUCTION DATE AND TIME:** | October 16, 2015 at 10:00 a.m. (New York Time) |
| **BID DEADLINE DATE AND TIME:** | October 15, 2015 at 4:00 p.m. (New York Time |
| **SALE HEARING DATE AND TIME:** | October 20, 2015 at 10:00 a.m. (New York Time) |
| **OBJECTION DEADLINE DATE AND TIME:** | October 19, 2015 at 4:00 p.m. (New York Time) |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                             :
In re:                                           :         Chapter 11
                                             :
FILMED ENTERTAINMENT INC.,       :
                                             :         Case No. 15-12244 (SCC)
                      Debtor.[1]      :
                                             :
---------------------------------------------------------------X

## NOTICE OF AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

**NOTICE IS HEREBY GIVEN**, as follows:

        1.        On August 10, 2015, Filmed Entertainment Inc., the above captioned debtor and debtor in possession (the "Debtor"), filed a motion (the "Motion") which in pertinent part (the "Bidding Procedures Motion") sought entry of an order (the "Bidding Procedures Order") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) approving the proposed Bidding Procedures[2] and the schedule to be used in connection with the proposed sale of the Acquired Assets, free and clear of all liens, claims and encumbrances, security interests and other interests, to the Successful Bidder that submits the highest and/or best offer for the Acquired Assets; (b) scheduling an

---

[1]     The last four digits of the debtor's federal tax identification number are 3867.

[2]     Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Motion.

Auction and a Sale Hearing to approve the Sale of the Acquired Assets; and (c) approving the form and manner of the notice of the Auction and Sale Hearing.

2.  A copy of each of the Motion, the Bidding Procedures, and the Bidding Procedures Order may be obtained by: (i) accessing the Debtor's claims and noticing agent's website at cases.primeclerk.com/FEI/, (ii) accessing the United State Bankruptcy Court for the Southern District of New York's (the "Bankruptcy Court") website at www.nysb.uscourts.gov (password required), (iii) going in person to the Office of the Clerk of the Bankruptcy Court, One Bowling Green, New York, NY 10004, or (iv) contacting Scott A. Griffin, Esq. of Griffin Hamersky P.C., counsel to the Debtor, at 485 Madison Avenue, 7th Floor, New York, NY 10022, by telephone at (212) 710-0338 or by email to sgriffin@griffinlegal.com.

3.  As set forth in the Bidding Procedures, the sale of the Acquired Assets is subject to the highest and/or best offer for all or a portion of the Acquired Assets and Bankruptcy Court approval.

4.  All interested parties are invited to make competing offers for all or a portion of the Acquired Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures Order. The deadline to submit competing offers (the "Bid Deadline") is **October 15, 2015 at 4:00 p.m.** (**New York Time**). Pursuant to the Bidding Procedures Order, if more than one Qualified Bid is received, the Debtor may conduct an auction (the "Auction") for the sale of the Acquired Assets at Griffin Hamersky P.C., 485 Madison Avenue, 7th Floor, New York, NY 10022, on **October 16, 2015 at 10:00 a.m. (New York Time)**.

5.  The Bidding Procedures Order further provides that a Sale Hearing will be held on **October 20, 2015 at 10:00 a.m.** (**New York Time)** before the Honorable Shelley C.

Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Court Room #623, One Bowling Green, New York, NY 10004.

6. At the Sale Hearing, the Debtor will request that the Bankruptcy Court enter an order, among other things, approving the highest and best bid for the Acquired Assets, to the Successful Bidder, pursuant to which the Debtor will transfer all of the Acquired Assets. In addition, the Debtor shall request that the Bankruptcy Court provide that the transfer of the Acquired Assets be (a) free and clear of all liens, claims and interests, except as expressly assumed by Buyer; and (b) exempt from any stamp tax or similar tax.

7. At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 Case. Objections, if any, to the Sale Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable Shelley C. Chapman, United States Bankruptcy Judge, United States Bankruptcy Court, Court Room #623, One Bowling Green, New York, NY 10004, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the nature and basis of the objection and the specific grounds therefore and must be served upon: (a) the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Andrea B. Schwartz, Esq.; (b) counsel for the Debtor, Griffin Hamersky P.C., 485 Madison Avenue 7th Floor, New York, NY 10022, Attn: Scott A. Griffin, Esq.; and (c) counsel to the Creditors' Committee, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attn: S. Jason Teele, Esq., so as to be actually received by **4:00 p.m. New York Time on October 19, 2015**.

8.      Requests for information concerning the sale of the Acquired Assets should be directed by written or telephonic request to: Scott A. Griffin, Esq. of Griffin Hamersky P.C., counsel to the Debtor, at 485 Madison Avenue, 7th Floor, New York, NY 10022, by telephone at (212) 710-0338 or by email to sgriffin@griffinlegal.com.

Dated:   September 25, 2015
        New York, New York

                GRIFFIN HAMERSKY P.C.

                By: /s/ Scott A. Griffin
                Scott A. Griffin
                Michael D. Hamersky
                485 Madison Avenue, 7th Floor
                New York, New York  10022
                Telephone: (212) 710-0338
                Facsimile: (212) 710-0339

                Counsel for the Debtor
                and Debtor in Possession