BAKER BOTTS LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
Emanuel C. Grillo
Christopher Newcomb

*Counsel to Buyer, Edge Line Ventures LLC*

Hearing Date:   December 2, 2015
Hearing Time:   11:00 a.m. (New York Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re                                                                                            :        Chapter 11
                                                                                                  :
FILMED ENTERTAINMENT INC.,                                     :        Case No. 15-12244 (SCC)
                                                                                                  :
                                   Debtor.                                        :
                                                                                                  :
-----------------------------------------------------------X

**DECLARATION OF JOHN LIPPMAN ON BEHALF OF BUYER IN SUPPORT OF
FINDING OF GOOD FAITH AND ADEQUATE ASSURANCE OF FUTURE
PERFORMANCE IN CONNECTION WITH DEBTOR'S MOTION FOR AN ORDER (A)
APPROVING SALE OF THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION WITH SUCH SALE, AND (C) RELATED RELIEF**

I, John Lippman, make this Declaration under 28 U.S.C. § 1746 and state that:

1.      I am older than 21 years of age and suffer no legal disability.

2.      I am the Manager of Edge Line Ventures LLC ("Edge Line" or the

"Buyer"). I have a Master of Business Administration degree from Harvard Business School,

and a Bachelor of Arts in Economics degree from Yale University. I have over 15 years of

professional experience in the finance- and media/entertainment fields, including both advisory-

and operational roles. I began my career at Lehman Brothers in Private Equity and Mergers &

Acquisitions.

3.      I am also an officer of the Debtor and its indirect parent Pride Tree

Holdings, Inc. ("Pride Tree"). Pride Tree is also the indirect parent company of Edge Line.

4.      I submit this Declaration for all permissible purposes under the Federal

Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and the Federal Rules of

Evidence in support of the Debtor's Motion, dated September 10, 2015 (the "Sale Motion") [Dkt.

No. 80],[1] for entry of an Order approving, among other things, (a) a sale of the Acquired Assets,

free and clear of all liens, claims and encumbrances, security interests and other interests except

as expressly assumed in the Purchase Agreement, to Edge Line; (b) certain procedures related to

the assumption and assignment of certain executory contracts and unexpired leases related to the

Acquired Assets and fixing the Cure Amounts; and (c) related relief.

5.      This Declaration is submitted with respect to the Buyer's request that the

Bankruptcy Court find that it (a) is entering into the Purchase Agreement in good faith and thus,

is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is

accordingly entitled to the full protection of that provision, and has otherwise proceeded in good

faith in all respects in connection with the Sale and this proceeding; and (b) the Buyer has the

financial resources to complete the Sale Transaction and can adequately perform its contractual

obligations post-Closing.

6.      Unless otherwise stated, all facts and statements included in this

Declaration are based upon my personal knowledge, my review of relevant documents,

information provided to me or verified by Buyer's professional advisors and/or my opinion

based upon my knowledge of the Buyer generally. I am authorized to submit this declaration on

---

[1]    Unless otherwise indicated, capitalized terms used but not defined herein shall have the same meanings ascribed
to them in the Sale Motion, or the Purchase Agreement (as defined below). The definitions in the Purchase
Agreement shall govern any inconsistency with the definitions in the Sale Motion.

behalf of the Buyer, and if called upon to testify, I could and would testify competently to the facts set forth herein.

## The Sale

7.     From and after the date Edge Line submitted its initial bid for the Debtor's assets on October 22, 2015, through the filing of the Asset Purchase Agreement on November 16, 2015, I did not participate as a representative of the Debtor in respect of the sale process, or exercised any influence over the Debtor in respect of the sale process. The Debtor's independent director Glenn Langberg negotiated on behalf of the Debtor. Moreover, Edge Line retained separate legal counsel, Baker Botts L.L.P., to represent it in connection with the sale process.

8.     Edge Line has the financial resources to consummate the Sale Transaction. As of today, Edge Line has approximately $550,000 in cash on hand in a bank account in Edge Line's name at Bank of America, N.A., for purposes of satisfying, among other things, the cash portion of the proposed purchase price. In addition, Pride Tree previously advanced, on Edge Line's behalf, a deposit of $50,000 which is currently being held in escrow by Debtor's counsel.

9.     The material terms and consideration included in the Asset Purchase Agreement include:

   a.  The cash portion of the Purchase Price will be $425,000 (an increase of $200,000 above the price initially proposed by Buyer);

   b.  Seller will assume and assign the Madison Avenue Lease and Madison Avenue Sublease to the Buyer, who agrees to turn over the Designated Sublease Profits for the benefit of the Debtor's creditors in an amount not to exceed $684,061;

c.  Buyer will assume approximately $475,000 in administrative expense payments due to the Debtor's affiliates, Bookspan LLC ("Bookspan") and Totally Awesome Warehouse LLC ("TAW");

d.  Buyer will agree to satisfy certain additional unpaid and unaccrued post-petition accounts payable, which are estimated to be, but not limited to, $55,000;

e.  Buyer will assume certain additional Wind-Down Costs in the amount of $116,250;

f.  Buyer will agree to cure monetary defaults under the Assumed Contracts up to the aggregate amount of $78,098 (the "Cure Amounts"), which will reduce the aggregate amount of general unsecured claims;

g.  Buyer and Seller agree to a mutual release of all claims against each other and each of its affiliates including, but not limited to: (i) the Seller's release of any Avoidance Actions against Bookspan, TAW, Books Acquisition LLC, Incredible Warehouse Holding Company LLC, DVD Direct Acquisition LLC, and Pride Tree, and each of its affiliates, officers and directors (the "Released Avoidance Actions"); and (ii) the Buyer's waiver of any and all Claims in the Chapter 11 Case, including, but not limited to, the following Claims, which will be disallowed and expunged from Schedule F of the Debtor's Schedule of Assets and Liabilities [Dkt. No. 65]: (a) Claim Number 165090 in the amount of $1,214,180.72 in favor of Bookspan; and (b) Claim Number 165128 in the amount of $21,939.45 in favor of TAW.

h.  Other Avoidance Actions, including, but not limited to, those against Bertelsmann Inc., Blackstone Group, JMCK Corp., Najafi Companies, Sony Corporation and

Warner Bros. Entertainment Inc. are excluded from the Acquired Assets and are expressly preserved for the estate (the "Retained Avoidance Actions").

10.    I understand from the Buyer's negotiations with the Debtor that the Sale Transaction allows the Debtor's estate to remain administratively solvent and to provide consideration to the unsecured creditors.

## Good Faith Buyer

11.    The negotiations with the Debtor leading up to the execution of the Purchase Agreement involved extensive arms-length bargaining among the parties who participated, each represented by their own competent legal counsel.  Negotiations between the Buyer and the Debtor started on October 22, 2015 when Edge Line submitted its initial bid, and continued through the filing of the Asset Purchase Agreement on November 16, 2015.  During that time, I understand that the Debtor continued discussions with potential buyers other than Edge Line.  During the course of the negotiations, Edge Line increased its bid at least three times, either through increases in the cash portion of the Purchase Price or through the assumption of additional liabilities, in response to comments and positions taken by the Debtor and its authorized representatives.  Indeed, the Buyer continued to increase its offer on multiple occasions even after it became apparent that there were no other active bidders.

12.    Moreover, there was no fraud, collusion or bad faith in or relating to the negotiations leading up to the execution of Purchase Agreement, the request to consummate the Sale Transaction pursuant to a private sale or in any other matter involving the Sale Transaction.

13.    Accordingly, the Buyer's efforts to acquire the Acquired Assets have been made in good faith.

## Adequate Assurance of Future Performance

14.   I understand that the Debtor may assume and assign its executory contracts and unexpired leases, subject to certain requirements, including providing for the cure of monetary defaults and establishing that the Buyer, as assignee, will be able to perform its contractual obligations thereunder.

15.   The Buyer has designated certain contracts for assignment. The Buyer will provide for certain amounts to cure monetary defaults under those contracts or leases in the amounts set forth in the Purchase Agreement, or may reach alternative cure agreements with the counterparties to such contracts or leases. By acquiring the Acquired Assets, free and clear, subject only to the Assumed Liabilities, the Buyer believes it will be able to pay its obligations as they come due. While the Buyer is a newly formed entity, the Buyer also has the ability to avail itself of certain operating capabilities of its affiliates to perform certain functions necessary to operate the Debtor's business. The Buyer will not have the burden of a substantial portion of the Debtor's legacy liabilities that had impaired its financial performance.

I declare under the penalty of perjury that the foregoing statements are true and correct.

Dated:  November 23, 2015
       New York, New York

                                          _____
                                          John Lippman
                                          Manager
                                          Edge Line Ventures LLC